**UNITED STATE DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Barbara A. Hagen, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | 11-3188 DWF/JJG |
| Best Buy Company, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

For her complaint against Defendant Best Buy Company, Inc., Plaintiff Barbara A. Hagen states and alleges:

**PARTIES**

1. Plaintiff Barbara A. Hagen ("Hagen") is an African-American female who resides in the City of Woodbury, State of Minnesota.

2. Defendant Best Buy Company, Inc. ("Best Buy" and/or "Defendant") is a Minnesota corporation with its principal place of business in the City of Richfield, State of Minnesota.

3. During all relevant times herein, Hagen was an "employee" of Best Buy within the meaning of 42 U.S.C. § 2000e(f) and Minn. Stat. § 363A.3(15). During all relevant times, Best Buy was Hagen's "employer" within the meaning of 42 U.S.C. § 2000e(b) and Minn. Stat. § 363A.03(16).

**JURISDICTION AND VENUE**
17996.0001 -- 977067_1

4. This action is brought under Title 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. § 1981, *et. seq.* Accordingly, this Court has original jurisdiction to adjudicate the matter under 28 U.S.C. § 1331.

5. Hagen also asserts claims under the Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et. seq.* This Court has supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367.

6. The unlawful practices at issue were committed in the District of Minnesota, the employment records relevant to those practices are, upon information and belief, maintained and administered within the District of Minnesota, and Best Buy operates its business within the District of Minnesota. Accordingly, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

7. Best Buy hired Hagen on February 12, 2007 as a Senior Director. During her employment, Hagen's work performance was beyond good faith reproach.

8. For example, Hagen's 2008 performance appraisal confirmed her capabilities and commitment to her job; her overall numerical performance rating of 4.3 placed her toward the top end of Best Buy's own "Above Expectation" category. Consistent with those observations, Best Buy repeatedly praised Hagen regarding her work performance and her future with the company.

9. Hagen did not receive a formal 2009 performance review. However, she received a strong endorsement that "[s]he has all the tools to take on increasing levels of

responsibility in the organization. . . . I believe Barbara has the potential to be a very senior leader within the organization."

10. In recognition of her outstanding potential, Best Buy awarded Hagen a 4.5% salary increase in 2009, significantly above the corporate target range of 2.5 to 3%.

11. In February 2009, Best Buy and Customer Services Group ("CSG") entered a Master Services Agreement (the "Agreement"). The Agreement was signed on Best Buy's behalf by Barbara Olson, Best Buy's Vice President of loyalty ("Olson").

12. Olson was the sole contract "signer" and a 51% "owner" of the project within Best Buy's corporate terminology. As sole contract signer and in her position as Vice-President, Olson had full control of the project, including approving and hiring CSG, all aspects of the project and scope of work, and the approval of all payments to CSG.

13. As a strategic Best Buy partner, CSG went through a full vetting process – independent of Hagen. Patrick Carter ("Carter"), CSG's president, is Hagen's brother.

14. The familial relationship between Carter and Hagen was well-known. To that end, Hagen informed both her direct supervisor and Best Buy's Marketing Research Manager of the relationship.

15. The Agreement proved problematic for reasons unrelated to Hagen. Nevertheless, Hagen soon became the unwanted target and repository of blame.

16. Despite Hagen's full disclosure that Carter is her brother, Best Buy claimed that Hagen had somehow violated the company's conflict of interest policy.

3

17. In a pretextual effort to shift the focus from its true motives, Best Buy commissioned a supposed "confidential report" and "investigation."

18. Notably, Best Buy chose not to interview either Hagen's supervisor or the company's own Marketing Research Manager, despite the fact that both had intimate knowledge of the facts and could conclusively dispel the pretextual basis for the claims against Hagen.

19. As a result of the "investigation," Best Buy involuntarily terminated Hagen's employment effective January 12, 2010.

## CAUSES OF ACTION

### COUNT I
### RACE AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII

20. Hagen restates and realleges the foregoing paragraphs as though fully set forth herein.

21. Hagen and Best Buy are employee and employer, respectively, within the definitions set forth in 42 U.S.C. § 2000e, *et seq*.

22. Defendant's conduct constitutes race and sex discrimination and is a direct violation of 42 U.S.C. § 2000e, *et seq*.

23. Defendant committed the above-alleged facts with reckless disregard or deliberate disregard for Hagen's rights and safety. As a result, Hagen is entitled to punitive damages.

24. As a direct and proximate cause of Defendant's violation of 42 U.S.C. § 2000e, *et seq*., Hagen has suffered and will continue to suffer the loss of past and future

income and employee benefits, mental anguish, emotional distress, embarrassment and other damages in excess of $75,000.00. Hagen is also entitled to attorneys' fees and costs incurred in connection with this claim.

## COUNT II
## RACE AND SEX DISCRIMATION IN
## VIOLATION OF MINNESOTA HUMAN RIGHTS ACT, § 363A.08

25. Hagen restates and realleges the foregoing paragraph as though fully set forth herein.

26. Minn. Stat. § 363A.08 provides in part that "it is an unfair employment practice for an employer, because of race. . .[and sex]" to discriminate against the person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

27. Defendant's conduct violated Minn. Stat. § 363A.08.

28. Defendant committed the above-alleged facts with reckless disregard or deliberate disregard for Hagen's right and safety. As a result, Hagen is entitled to punitive damages.

29. As a result of Defendant's violation of Minn. Stat. § 363A.08, Hagen has suffered and will continue to suffer the loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, and other damages in excess of $75,000.00. Hagen is also entitled to attorneys' fees and costs incurred in connection with this claim.

## COUNT III
## RACE AND COLOR DISCRIMATION IN VIOLATION OF 42 U.S.C. § 1981

30. Hagen restates and realleges the foregoing paragraphs as though fully set forth herein.

31. 42 U.S.C. § 1981 provides all persons with equal rights under the law.

32. Defendant intentionally discriminated against Hagen based upon her race by denying her equal rights in the enjoyment of all benefits, privileges, and terms and conditions of her contractual relationship with Defendant.

33. Defendant's conduct toward Hagen violated 42 U.S.C. § 1981.

34. Defendant committed the above-alleged facts with reckless disregard or deliberate disregard for Hagen's rights and safety. As a result, Hagen is entitled to punitive damages.

35. As a direct and proximate cause of Defendant's discrimination, Hagen has suffered loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other pain and suffering in and amount in excess of $75,000.00. Hagen is also entitled to attorneys' fees and costs incurred in connection with this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Barbara A. Hagen seeks judgment against Defendant as follows:

1. That the practices of Defendant at issue be adjudged to violate the rights secured to Plaintiff by Minn. Stat. § 363A.08, *et. seq.*, Title VII, 42 U.S.C. § 2000e and § 1981;

2. For compensatory damages, loss of income, mental anguish, emotional distress, and other damages in excess of $75,000.00;

3. For an award of all damages recoverable under Title VII, 42 U.S.C. § 2000e in an amount in excess of $75,000.00;

4. For an award of damages recoverable under the Minnesota Human Rights Act, including treble damages, in an amount in excess of $75,000.00;

5. For an award of damages recoverable under 42 U.S.C. § 1981, in an amount in excess of $75,000.00;

6. For punitive damages in an amount to be determined at trial;

7. For attorneys' fees, costs, and disbursements;

8. For assessment of a civil penalty, payable to the State of Minnesota, pursuant to the Minnesota Human Rights Act; and

9. For such other and further relief as the Court deems just and equitable.

HELLMUTH & JOHNSON, PLLC

Dated: October 27, 2011

By _____
John J. Steffenhagen, ID No 195947
Mark E. Rath, ID No 388756
8050 West 78th Street
Edina, Minnesota 55439
Telephone: (952) 941-4005
**ATTORNEYS FOR PLAINTIFF**

17996.0001 - 977067